## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
_____

Pablo Gonzalez-Aviles, 6626 Hartford Drive, Memphis     :
TN  38134; and Heleodoro Pena-Gonzalez, 33 Sullivan     :
Avenue, Apt. B-1, Westminster, MD 21557, Carroll     :
County; on behalf of themselves and others similarly     :
situated,     :

Plaintiffs     :

v.     :

    :

Thomas E. Perez, in his official capacity as United     :
States Secretary of Labor; United States Department     :
of Labor; Portia Wu in her official capacity as Assistant     :
Secretary, Employment and Training Administration,     :
     U.S. Department of Labor, Frances Perkins     :
     Building, 200 Constitution Ave., NW,     :
     Washington, DC 20210     :

    :

Government Defendants     :

and     :

    :

Outside Unlimited, Inc., 4195 St. Paul Road,     :
Hampstead, MD, 21074, Baltimore County;     :

A.R. Star Services, Inc., 19832 Old York Road, White     :
Hall, MD, 21161, Baltimore County;     :

Akehurst Landscape Service, Inc., 712 Philadelphia     :
Road, Joppa, MD, 21085, Harford County;     :

Bartenfelder Landscape Service, Inc., 3341 Forge Hill     :
Road, Street, MD, 21154, Harford County;     :

Bob Jackson Landscapes, Inc., 11436 Cronridge Drive,     :
Owings Mills, MD, 21117, Baltimore County;     :

Botanica Enterprises, Inc., 18349 Lappons Road,     :
Boonsboro, MD, 21713, Washington County;     :

Cedar Ridge Landscape, Inc., 4701 Long Green Road,     :
Glen Arm, MD, 21057, Baltimore County;     :

Columbia Grounds Management Corp., 2020 Daniels     :
Road, Ellicott City, MD, 21043, Howard County;     :

Continental Landscaping, Inc., 889 Maple Tree Road,     :
Severn, MD, 21144, Anne Arundel County;     :

Civil No.

COMPLAINT

CLASS ACTION

Creative Landscapes by Gregory, Inc., 6126 Jefferson Pike, Frederick, MD, 21703, Frederick County;

C. S. Lawn & Landscape, Inc., 1107 Butterworth Court, Stevensville, MD, 21666, Queen Anne's County

Custom Ground Maintenance, Inc., 17539 Pretty Boy Dam Road, Parkton, MD, 21020, Baltimore County

Denison Landscaping, Inc., 8911 Oxon Hill Road, Fort Washington, MD, 20744, Prince George's County;

Easton Ice Company, Inc., 108 East Avenue, Easton, MD, 21601, Talbot County;

Ed's Plant World, Inc., 11811 Branch Avenue, Brandywine, MD, 20613, Prince George's County;

Excell Lawn Care Inc., 1205 Saddleback Way, Bel Air, MD, 21014, Harford County;

Exec-U-Lawn Landscape Management, Inc., 17410 Central Avenue, Bowie, MD, 20716, Prince George's County;

Facility Services Co., 14607 Rothgeb Drive, Rockville, MD, 20850, Montgomery County;

Frank Joseph & Sons, Inc., 514 Tremont Circle, Annapolis, MD, 21409, Anne Arundel County;

Goshen Enterprises, Inc., 5300 Riggs Road, Laytonsville, MD, 20882, Montgomery County;

Green Angels Landscaping LLC, 10457 State Route 108, Columbia, MD, 21044, Howard County;

Hartsoe Property Services, LLC, 150 N. Nichols Street, Bel Air, MD, 21014, Harford County;

Ivy Hill Nursery Co., Inc., 1305 C. Enterprise Court, Bel Air, MD, 21014, Harford County;

Kingsdene Nurseries, Inc., 16435 York Road, Monkton, MD, 21111, Baltimore County;

Larson's Tree Service & Landscaping, Ltd., 741 Leeds Road, Elkton, MD, 21921, Cecil County;

Laytonsville Turf Farm, LLC, 5225 B Damascus Road, Gaithersburg, MD, 20882, Montgomery County;

Lee's Lawn Service, 4319 Long Green Road, Glen Arm, MD, 21057, Baltimore County;

Maryland Natives Nursery, Inc., 4812 East Joppa Road, Perry Hall, MD, 21128, Baltimore County;

Mead Tree & Turf Care, Inc., 3316 Hipsley Mill Road, Woodbine, MD, 21797, Howard County;

M.J.M. Lawn And Landscaping, Inc., 10838-D Williamson Lane, Cockeysville, MD, 21030, Baltimore County;

Moon Nurseries, Inc., 145 Moon Rd, Chesapeake City, MD, 21915, Cecil County;

Moon Site Management Inc., 145 Moon Road, Chesapeake City, MD, 21915, Cecil County;

Natural Art Landscaping, Inc., 2601 W. Medical Hall Road, Bel Air, MD, 21015, Harford County;

Oak Hill Lawn Care & Landscaping, Inc., 1839 Susquehanna Hall Road, Whiteford, MD, 21160, Harford County;

P. Stadler and Sons Co., 6815 Olney Laytonsville Road, Laytonsville, MD, 20882, Montgomery County;

Paul Schwartz Landscaping, LLC, 4911 Carroll Manor Road, Baldwin, MD, 21013, Baltimore County;

PGC Landscape LLC, 8710 Fingerboard Road, Urbana, MD, 21704, Frederick County;

Pinehurst Landscape Co., Inc., 4809 Long Green Road, Glen Arm, MD, 21057, Baltimore County;

Poole Landscaping, Inc., 7802 Biggs Ford Road, Frederick, MD, 21701, Frederick County;

Quality One, Inc., 3709 Level Village Road, Havre de Grace, MD, 21078, Harford County;

South Forty, Inc., 10818 Williamson Lane, Cockeysville, MD, 21030, Baltimore County;

Strates Fine Foods, Inc., 4607 Old National Pike Road, Mt. Airy, MD, 21771, Carroll County;

TDH Landscaping, LLC, 2734 Hess Road, Monkton, MD 21111, Baltimore County;

Terrace Turf Lawn Services, Inc., 1272 Generals Highway, Crownsville, MD, 21032, Anne Arundel County;

The Members Club at Four Streams, Inc., 19501 Darnestown Road, Beallsville, MD, 20839, Montgomery County;

W.H. Boyer, Inc., 2945 Route 97, Glenwood, MD, 21738, Howard County;

Woodfield Landscaping Inc., 1800 West Grove
Avenue, Fallston, MD, 21047, Harford County;

Alpha Landscape Contractors, Inc., 2823 Flintstone
Road, Millers, MD, 21102, Carroll County;

Grounds Management and Landscaping Inc., 17930
Central Avenue, Mitchellville, MD, 20716, Prince
George's County;

KCS Landscape Management, Inc., 7915 Cooper
Avenue, Ft. Meade, MD, 20755, Anne Arundel County;

Lawns Unlimited, LLC, 2200 Kalmia Road, Bel Air,
MD, 21015,  Harford County;

Manor View Farms, Inc., 15601 Manor Road,
Monkton, MD, 21015, Baltimore County;

Porter Landscaping, Inc., 7621 Fitch Lane, Baltimore,
MD, 21236, Baltimore County;

Landcare USA LLC, 7135 Standard Road, Hanover,
MD, 21076, Anne Arundel County;

Turf Connection, Inc., 3538 Prospect Road, Street, MD,
21154, Harford County;

Wentworth Nursery, Inc., 41170 Oakville Road,
Mechanicsville, MD, 20659, St. Mary's County;

William T. King, Inc., 619 East Cold Bottom Road,
Sparks, MD, 21152, Baltimore County;

A of R Services, Inc., Foster Plaza 5, 651 Holiday
Drive, Suite 300, Pittsburgh, PA, 15220;

Clippers Inc., 42701 Trade West Drive, Sterling, VA,
20166;

Deggeller Attractions, Inc., 3350 SW Deggeller Court,
Palm City, FL  34990;

Fairplay Games, Inc., 7651 Ashley Park Court, Suite
408 - #306, Orlando, FL, 32835;

Floyd and Baxter Co., Inc., 101 Oak Hill Dr, Lebanon,
TN, 37087;

Gibson Landscapes Inc., 6247 Falls Road, Baltimore,
MD, 21209, Baltimore County;

HV LLC , 700 Vazquez Lane, Donna, TX, 78537;

Hydro-Tech Irrigation Co., 43813 Beaver Meadow
Road, Suite 200, Sterling, VA, 20166;

Interstate Amusements of America, Inc. 674 Tomoka
Farms Road, New Smyrna Beach, FL, 32168;

4

JKJ Equipment Co., Inc., 32775 FM 106, Rio Hondo,  :
TX, 78583;                                         :

Kane Landscapes, Inc., 105 Douglas Court, Sterling, :
VA, 20166;                                          :

Landscape Development Co., Inc., 16307 Carrs Mill   :
Road, Woodbine, MD, 21797, Howard County;           :

Surrounds Inc., 21580 Blackwood Court, Sterling, VA, :
20166                                                :

Toll Brothers, LLC-VA, 19775 Belmont Executive      :
Plaza #250, Ashburn, VA, 20147;                      :

ValleyCrest Companies, 24151 Ventura Road,          :
Calabasas, CA, 91302;                               :

Whatever Enterprises, LLC., 8803 Nundy Avenue,      :
Gibsonton, FL, 33534;                               :

Challenger Sports Corp., 8263 Flint, Lenexa, KS,    :
66214;                                              :

Clippers Inc.-NOVA, 42701 Trade West Drive,         :
Sterling, VA, 20166;                                :

Inners Amusement Co., 56 Oak Street, York, PA,      :
17402;                                              :

Jamie Ness Racing, 1605 Braken Avenue, Wilmington,
DE, 19808;

Kelly-Miller Bros. Circus, Ltd., 2581 E. 2070 Road,
Hugo, OK, 74743; and

Sposato Landscape Co., Inc. 16181 Hudson Road,
Milton, DE, 19968

    Employer Defendants

_____

## COMPLAINT-CLASS ACTION

### PRELIMINARY STATEMENT

1.  This is an Administrative Procedure Act ("APA") case brought on behalf of a

class of U.S. and foreign workers employed in 2013 pursuant to H-2B labor certification

applications approved by the Defendant Department of Labor ("DOL").  Plaintiffs challenge

DOL's actions in unlawfully suspending Plaintiffs' right to receive supplemental prevailing

wages for work performed in 2013.  Those wages were required pursuant to Supplemental

Prevailing Wage Determinations ("SPWDs") that DOL issued to H-2B employers in accordance

with the Court's Order in *Comité de Apoyo a los Trabajadores Agrícolas v. Solis*, 933 F.Supp.2d

700 (E.D.Pa.2013) ("*CATA II*"), and DOL's Interim Final Rule published on April 24, 2013, in

response to the *CATA II* order.  78 Fed. Reg. 24,047 (Apr. 24, 2013).

2.     Plaintiffs allege that DOL unlawfully suspended the duty to pay SPWD wages by

improperly allowing the Employer Defendants to use administrative appeals to challenge the

legality of the Secretary of Labor's SPWD wage requirement.  The administrative appeal

regulations at 20 C.F.R. §§ 655.10(g), 655.11(a) and 655.11(e) do not permit such legal

challenges, as challenges to the Secretary's policies may only be brought pursuant to the

Administrative Procedure Act.  By allowing those improper administrative appeals to go

forward, DOL effectively invited its administrative appeal hearing officers to issue *ultra vires*

opinions about the legality of the Secretary's wage rules.  Eventually, the Administrative Law

Judges ("ALJs") on the Board of Alien Labor Certification Appeals ("BALCA") accepted the

invitation and issued an opinion declaring the Secretary's SPWD requirement unlawful.  *In the

Matter of Island Holdings LLC,* 2013-PWD-00002 (BALCA Dec. 3, 2013).  Although DOL now

acknowledges that BALCA had no authority to issue such a ruling and has refused to enforce it,

neither has it overruled or vacated it.  Instead, shortly after the *Island Holdings* decision was

issued, DOL stayed further action with respect to the Island Holdings case and all other

administrative appeals challenging the legality of the Secretary's SWPD policy, including those

filed by the Employer Defendants.  That stay has been in place for nearly two years and DOL has

given no indication when, if ever, the stay will be lifted.  In the meantime, the Plaintiffs' right to receive SPWDs remains suspended.

3.      Plaintiffs seek relief under the APA declaring DOL's actions in allowing employers to challenge the lawfulness of DOL's SPWD policy using 20 C.F.R. §§ 655.10(g), 655.11(a) and 655.11(e) administrative appeals to be unlawful and vacating those improper appeals.   Plaintiffs also seek an order declaring the Secretary's SPWD requirement to be lawful and declaring those wages to be due and owing.  The Employer Defendants whose unlawful administrative appeals Plaintiffs seek to have vacated have been named as defendants in order to ensure that complete relief can be awarded for DOL's APA violations.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 over the lawsuit for review of agency actions alleged to be in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706 (1946).

5.      This Court has venue pursuant to 28 U.S.C. §§ 1391(a)(2) and (e).

## PARTIES

**Plaintiffs**

6.      Plaintiff Pablo Gonzalez-Aviles is a citizen of Mexico.  He entered the United States on an H-2B visa in 2013 to work for Outside Unlimited, Inc.

7.      Plaintiff Heleodoro Peña-Gonzalez is a citizen of Mexico.  He entered the United States on an H-2B visa in 2013 to work for Outside Unlimited, Inc.

**Defendants**

8.      Defendant Perez is the United States Secretary of Labor.  The Secretary is responsible for all functions of DOL, including administration of the labor certification requirement of the H-2B program.  Secretary Perez is sued in his official capacity, pursuant to 5 U.S.C. § 703.

9.      Defendant United States Department of Labor is responsible for administration of the temporary labor certification requirement of the H-2B program.

10.      Defendant Portia Wu is Assistant Secretary of Labor for Employment and Training.  She heads the DOL's Employment and Training Administration ("ETA") which is the division of DOL responsible for H-2B temporary labor certifications.  Defendant Wu is sued in her official capacity pursuant to 5 U.S.C. § 703.

**Employer Defendants**

11.      Employer Defendants are either Maryland businesses that employed U.S. and foreign workers in 2013 pursuant to approved H-2B labor certifications, or out of state businesses that employed U.S. and H-2B workers in Maryland in 2013 pursuant to approved H-2B labor certifications.  Each of the Employer Defendants filed appeals of SPWD determinations that they received from DOL

12.      Employer Defendants who are Maryland based businesses are:  Outside Unlimited, Inc.; A.R. Star Services, Inc.; Akehurst Landscape Service, Inc.; Bartenfelder Landscape Service Inc.; Bob Jackson Landscapes, Inc.; Botanica Enterprises, Inc.; Cedar Ridge Landscape, Inc.; Columbia Grounds Management, Inc.; Continental Landscaping, Inc.; Creative Landscapes by Gregory, Inc.; CS Lawn Landscape Inc.; Custom Ground Maintenance, Inc.;

Denison Landscaping, Inc.; Easton Ice Company Inc. ; Ed's Plant World, Inc.; Excell Lawn

Care, Inc.; Exec-U-Lawn Landscape Management, Inc.; Facility Services Co.; Frank Joseph &

Sons, Inc.; Goshen Enterprises, Inc.; Green Angels Landscaping LLC; Hartsoe Property Services

LLC; Ivy Hill Nursery Co., Inc.; Kingsdene Nurseries, Inc.; Larson's Tree Service &

Landscaping Ltd.; Laytonsville Turf Farm, LLC; Lee's Lawn Service; Maryland Natives

Nursery, Inc.; Mead Tree & Turf Care Inc.; MJM Landscaping Inc.; Moon Nurseries, Inc.; Moon

Site Management Inc.; Natural Art Landscaping, Inc.; Oak Hill Lawn Care and Landscaping,

Inc.; P. Stadler & Sons Co.; Paul Schwartz Landscaping, LLC; PGC, Landscape LLC.; Pinehurst

Landscape Co., Inc.; Poole Landscaping, Inc.; Quality One, Inc.; South Forty, Inc.; Strates Fine

Foods; TDH Landscaping, LLC; Terrace Turf Lawn Service, Inc.; The Members Club at Four

Streams, Inc.; W.H. Boyer, Inc.; Woodfield Landscaping Inc.; Alpha Landscape Contractors,

Inc.; Grounds Management and Landscaping Inc.; KCS Landscape Management, Inc.; Lawns

Unlimited LLC; Manor View Farm, Inc.; Porter Landscaping, Inc.; Landcare USA LLC; Turf

Connection, Inc.; Wentworth Nursery, Inc.; and William T. King, Inc.

13.     Employer Defendants who are out of state businesses who employed U.S. and H-

2B workers in Maryland in 2013 are: A of R Services, Inc.; Clippers Inc.; Deggeller Attractions,

Inc.; Fairplay Games, Inc.; Floyd and Baxter Co., Inc.; Gibson Landscapes Inc. ; HV LLC ;

Hydro-Tech Irrigation Co., Inc.; Interstate Amusements of America, Inc.; JKJ Equipment Co.,

Inc.; Kane Landscapes, Inc.; Landscape Development Co.; Surrounds Inc.; Toll Brothers, LLC-

VA; ValleyCrest Companies; Whatever Enterprises, LLC.; Challenger Sports Corp.; Clippers

Inc.-NOVA; Inners Amusement Co.; Jamie Ness Racing; Kelly-Miller Bros. Circus, Ltd.; and

Sposato Landscape Co.

**Plaintiffs' Class**

14.     Plaintiffs Gonzalez-Aviles and Gonzalez-Pena bring this action as a

Rule 23(b)(2) class action on behalf of a class defined as:

> All U.S. and H-2B workers employed during 2013 by one or more of
> the Employer Defendants in jobs described in the Employer Defendants
> approved H-2B labor certification applications.

15.     Plaintiffs' class is so numerous that it is impractical to bring all its members

before this Court.  On information and belief, the class exceeds 1,500 individuals.

16.     There are questions of law and fact common to the class including whether DOL

violated its own regulations by allowing the Employer Defendants to bring legal challenges to

the SPWDs pursuant to 20 C.F.R. §§ 655.11(a) and (e), whether the decision of the Board of

Alien Labor Certification Appeals decision in the *Island Holdings* appeal was arbitrary and

capricious, and whether DOL unlawfully withheld or unreasonably delayed issuance of the

declaratory order that would overrule the *Island Holdings* decision.

17.     The representative Plaintiffs' claims are typical of the claims of the other class

members.

18.     There are no conflicts between the representative Plaintiffs and the class, and they

will fairly and adequately protect the interests of the class.

19.     The class is properly brought under Fed. R. Civ. P. 23(b)(2) because the

challenged actions of the Department of Labor generally apply to all members of the class so that

final declaratory and injunctive relief is appropriate for the class as a whole.

# FACTS

## Statutory and Regulatory Framework

20.     The Immigration Nationality Act, 8 U.S.C. § 1101(a)(15)(H)(ii)(b) permits employers to import foreign workers to perform temporary non-agricultural services or labor if "…unemployed persons capable of performing … service or labor cannot be found in this country." 8 U.S.C. § 1101 (a)(15)(H)(ii)(b).

**21.**     The Immigration Act broadly charges the Attorney General – now the Department of Homeland Security ("DHS")[1] – with determining, "upon petition of the importing employer," whether to grant an H-2B visa "after consultation with appropriate agencies of Government."  8 U.S.C. § 1184(c)(1).  DHS has designated the United States Department of Labor ("DOL") as the appropriate agency with which to consult.  DOL's consultation takes the form of a temporary labor certification which advises DHS whether (1) qualified workers in the United States are available to fill an employer's job and whether (2) the alien's employment will adversely affect wages and working conditions of similarly employed United States workers.  8 C.F.R. § 214.2(h)(6)(iii)(A) (2009).  If, after reviewing an employer's job offer and recruitment efforts, the Secretary of Labor determines that U.S. workers are not available to fill the jobs described in the employer's application and that the offered terms of work will not adversely affect similarly employed U.S. workers, DOL issues a temporary labor certification to that effect.  8 C.F.R.

---

[1]     The Homeland Security Act of 2002 transferred the authority of the Attorney General for administering certain immigration functions to the new Department of Homeland Security. 6 U.S.C. §§ 202, 236.

§§214.2(h)(6)(iii)(C) and 214.2(h)(6)(iv)(A).  No petition for H-2B visas may be issued by DHS without an approved labor certification from DOL.  *Id.*

### The H-2B Prevailing Wage Rule

22.     The Secretary of Labor has established rules and procedures governing the issuance H-2B temporary labor certifications.  20 C.F.R. § 655.0(a); 73 Fed. Reg. 78,020 (Dec. 19, 2008); 78 Fed. Reg. 24047 (Apr. 24, 2013); 80 Fed. Reg. 24042 (Apr. 29, 2015).

23.     Among other requirements for the issuance of a temporary labor certification, DOL has, for over half a century, required employers to offer wages no less than the prevailing wage for the occupation and location where the work is to be performed.   This prevailing wage requirement is designed to ensure accurate testing of the availability of U.S. workers (U.S. workers cannot be expected to accept jobs at substandard wages) and to ensure that if permission is granted to employ foreign H-2B workers, their employment will not adversely affect the wages of similarly employed U.S. workers.

24.     From the 1960s until 2005, DOL required the prevailing wage rate for the H-2 program to be at least the average wage rate paid to similarly employed U.S. workers in the area of intended employment.  *See Comité de Apoyo a los Trabajadores Agrícolas v. Solis,* No. 09-240, 2010 WL 3431761, at *2 (E.D. Pa. Aug. 30, 2010) ("*CATA I*"); 20 C.F.R. § 655.40(a)(2)(i) (1978).

25.     In 2005, DOL issued its 2005 Wage Guidance, which abandoned DOL's prior policy of establishing the prevailing wage at the average wage of similarly employed U.S. workers and instead arbitrarily subdivided the survey data for similarly employed workers into two parts from which four different, so-called "skill level" wages were generated.  *CATA I*, 2010

WL 3431761, at *2 & *18.  (The wages were simply a mathematical manipulation of the survey data and had no relation to actual skill levels).  The majority of H-2B employers were only required to pay Skill Level I or II wages – both of which were far below the average wage for the occupation in the area of intended employment.

26.     In 2008, DOL promulgated H-2B regulations that codified the "skill level" wage policy provided in its 2005 Wage Guidance.  73 Fed. Reg. 78,020, 78,056 (Dec. 19, 2008) ("2008 wage rule"); 20 C.F.R. § 655.10(b)(2) (2009).

27.     Organizations representing H-2B and U.S. workers challenged the 2008 skill level wage rule under the Administrative Procedure Act ("APA") in the *CATA v. Solis* action. *See CATA I*, 2010 WL 3431761, at *1. On August 30, 2010, Judge Pollak of the Eastern District of Pennsylvania granted summary judgment to the plaintiffs in *CATA*, finding that the skill level prevailing wage methodology was unlawful because it was a legislative rule that had never been subject to notice and comment rulemaking.  *Id.* at *25.

28.     In response to Judge Pollak's Order, DOL published a new wage rule on January 19, 2011 with an effective date of January 1, 2012. 76 Fed. Reg. 3452 (Jan. 19, 2011) ("2011 wage rule").  In that rulemaking, DOL made a factual finding that the use of skill level prevailing wages adversely affected U.S. workers because it "artificially lowers [wages] to a point that [they] no longer represent[] a market-based wage for the occupation." 76 Fed. Reg. at 3463.

29.     On April 14, 2011, in anticipation of the implementation of the 2011 wage rule, DOL published a Notice modifying its labor certification application form, ETA Form 9142 Appendix B.1. *See* 76 Fed. Reg. 21,036 (Apr. 14, 2011).  The new form required employers

seeking labor certification to agree to pay at least the prevailing wage that "is or will be" issued by DOL during the period of the certification.  *See* 76 Fed. Reg. at 21,036.

30.     DOL delayed implementation of the 2011 wage rule numerous times in response to employer lawsuits challenging the validity of the 2011 wage rule and congressional appropriations measures barring DOL from using funding to implement the rule. *See* 76 Fed. Reg. 59,896 (Sept. 28, 2011); 76 Fed. Reg. 73,508 (Nov. 29, 2011); 76 Fed. Reg. 82,115 (Dec. 30, 2011).

31.     Because of the delays in implementation of the 2011 wage rule, DOL continued to rely on the unlawful 2008 "skill level" methodology to calculate prevailing wages despite its findings that those wages adversely affect U.S. worker wages.

32.     On September 27, 2012, CATA moved to enjoin DOL from further use of the 2008 skill level methodology. On March 21, 2013, the Court granted the plaintiffs' motion and vacated the 2008 skill level prevailing wage regulation.  *See CATA*, 933 F. Supp. 2d 700, 711-12 (E.D. Pa. 2013) ("*CATA II*"). According to the Court's order, all labor certifications issued under the 2008 wage rule exceeded DOL's delegated authority because they certified employers at prevailing wage rates that adversely affect U.S. worker wages in direct violation of DOL's regulatory mandate. *See id.*  The Court remanded the rule to DOL and ordered DOL to come into compliance with the Order.

**The April 24, 2013 Interim Final Wage Rule (IFR)**

33.     In response to the *CATA II vacatur* order, DOL and DHS promulgated an Interim Final Wage Rule ("IFR") in the Federal Register on April 24, 2013. 78 Fed. Reg. 24,047 (Apr. 24, 2013). The IFR set prevailing wages for the H-2B program at the mean wage for a given

14

occupation as determined by the government's Occupational Employment Statistics ("OES") survey.

34.     In the IFR, DOL stated that the *CATA II vacatur* order required that the IFR apply immediately, not only to new labor certification applications, but to "all previously granted H-2B temporary labor certifications for any work performed on or after the effective date of this interim rule."  *See id.*

35.     Accordingly, the IFR indicated that all employers previously granted certification would be informed of their new IFR wage rate through the issuance of supplemental prevailing wage determinations ("SPWDs").  The IFR stated the new wage rate would be effective immediately upon an employer's receipt of its SPWD.  In requiring this pay increase DOL cited the employers' agreement in their H-2B applications to pay the "prevailing wage that is or will be issued by the Department" during the period of certification.  ETA Form 9142, Appendix B.1.

36.     Each of the Employer Defendants received one or more H-2B labor certifications from DOL prior to the *CATA II vacatur* order and used those certifications to obtain H-2B visas for jobs in Maryland.  Because they were issued before the March 21 *vacatur* order, those labor certifications authorized payment of skill level prevailing wages.  Nevertheless, they were issued subject to each Employer Defendant's promise to pay at least the prevailing wage that "is or will be" set by DOL during the period of certification.

37.     Each Employer Defendant's promise to pay at least the prevailing wage that is or will be set by DOL during the period of certification was incorporated as a matter of law into the work contracts of the Plaintiffs and the members of the Plaintiffs' class.

38.     Defendant Outside Unlimited, Inc. provided two of its H-2B visas to the named Plaintiffs, who then worked for Outside Unlimited in Maryland in 2013.

39.     In late April 2013, the ETA's Office of Foreign Labor Certification National Prevailing Wage Center began issuing SPWD notices to H-2B employers certified prior to the *CATA II vacatur* Order, including the Employer Defendants.  Those SPWDs set forth the new IFR wage prevailing wage(s) that each Employer Defendant was required to pay to its workers upon receipt of the SPWD.  According to DOL, ETA completed this process in August 2013.

40.     For example, DOL sent an SPWD notice to Defendant Outside Unlimited, Inc., on July 16, 2013.  That notice required Outside Unlimited to raise the pay rates for its Maryland landscape workers from the skill level wage of $9.49/hour to the new IFR rate of $12.86/hour.

41.     In total, DOL issued SPWD notices for 3,098 labor certifications.  Information available in DOL's public disclosure database indicates that approximately 58,000 H-2B workers were employed in the jobs subject to those SPWDs.

42.     In the SPWD notices to employers, DOL indicated that an employer could request a "redetermination" of its SPWD wage rate within thirty (30) days from the date of the determination's issuance pursuant to 20 C.F.R. § 655.10(g)(1).  That regulation allows employers to contest factual issues relating to the wage level assigned to it by submitting "supplemental information" to the National Processing Center (NPC) showing such things as computational errors or factual errors in a DOL determination finding a private wage survey unacceptable. *Id.*

43.     As of August 23, 2013, H-2B employers filed requests for redeterminations pursuant to 20 C.F.R.§ 655.10(g)(1) in 1,400 out of the 3,098 labor certifications for which

SPWDs were issued.  All of the Employer Defendants requested redeterminations.  On information and belief, none of those requests submitted supplemental factual information or raised factual issues.  Instead they all challenged the Secretary's authority to issue SPWDs. Even though 20 C.F.R.§ 655.10(g) does not allow for such legal challenges, DOL accepted these § 655.10(g)(1) requests for redetermination and allowed employers filing them to continue paying the 2008 skill level wage previously assigned to them during the pendency of the redetermination.

44.     Based on DOL's view that the requests for redetermination suspended the duty to pay the SPWDs, the Employer Defendants continued to pay Plaintiffs and the members of Plaintiffs' class the skill level prevailing wages previously approved by DOL.

45.     The certifying officers conducting the 20 C.F.R.§ 655.10(g) redeterminations had no authority to rule on the Secretary's legal authority to require payment of SPWDs.

46.     DOL certifying officers denied all 1,400 ETA cases in which redeterminations of SPWDs were requested pursuant to 20 C.F.R.§655.10(g).

47.     Each of the Employer Defendants as well as other H-2B employers then filed requests for "Center Director Review" of their SPWDs pursuant to 20 C.F.R. § 655.11(a).

48.     On information and belief, those requests for Center Director Review only raised legal challenges to the Secretary's authority to require payment of the SPWDs.

49.     A Center Director Review pursuant to 20 C.F.R.§ 655.11(a) is based on the record from the§ 655.10(g) review and is similarly limited to reviewing factual issues regarding the wage level assigned to a job opportunity by the NPC.  Section 655.11(a) does not give the certifying officers conducting Center Director Reviews the authority to review the legality of the

17

Secretary's prevailing wage policies, such as the decision to issue and require payment of SPWDs.

50.     In direct violation of 20 C.F.R.§ 655.11(a), DOL accepted the requests for Center Director Reviews raising legal challenges to the Secretary's authority to issue SPWDs and allowed the Employer Defendants and other H-2B employers to continue paying the 2008 skill level wage rate previously assigned to them during the pendency of their Center Director reviews.

51.     On August 20, 2013, DOL certifying officers decided the first three Center Director Reviews challenging the legality of the SPWD requirement.  Those reviews involved an employer named Island Holdings LLC.  All three decisions affirmed the SPWDs assigned to Island Holdings.

52.     On August 30, 2013, Island Holdings filed a Request for Review of its three Center Director Review decisions pursuant to 20 C.F.R.§ 655.11(e).  That regulation allows an employer to request review of a Center Director Review decision by DOL Administrative Law Judges on the Board of Alien Labor Certification Appeals ("BALCA").

53.     BALCA was established by 20 C.F.R. Part 656. *See* 52 Fed. Reg. 11,217-19 (Apr. 8, 1987), and consists of ALJs whose authority is limited by regulation and its grant of authority to applying the Secretary's wage policies to specific facts. *See* 20 C.F.R. §§ 656.26-27, and the APA, 5 U.S.C. § 556(c). *See also* 20 C.F.R. §§ 655.11(e) and 655.33.  BALCA has no authority pursuant to 20 C.F.R.§ 655.11(e) or any other regulation to review the legality of the Secretary's prevailing wage policies, including his policy to require payment of SPWDs.

54.      Island Holdings' 20 C.F.R. § 655.11(e) request for BALCA review, like its

§§ 655.10(g) and 655.11(a) requests for review, challenged the Secretary's legal authority to

require payment of SPWDs.

55.      In direct violation of 20 C.F.R.§ 655.11(e), DOL allowed Island Holdings to

challenge the Secretary's authority to issue SPWDs in its § 655.11(e) appeal to BALCA.

Because DOL was treating the Island Holdings BALCA appeal as a test case, DOL stayed

further consideration of all other pending Center Director review requests challenging SPWDs,

including those of the Employer Defendants.

56.      On information and belief, because of this stay of their Center Director Review

requests, the Employer Defendants continued paying skill level prevailing wage rates through the

end of their certification period.

57.      On December 3, 2013, BALCA issued an *en banc* decision in the Island Holdings

LLC appeal in which it held that the Secretary did not have legal authority to require employers

to pay SPWDs as mandated by the IFR.  BALCA remanded the matter to the NPC with

instructions to vacate the SPWDs that the Secretary had issued to Island Holdings.

58.      On December 11, 2013, CATA and others filed a new suit alleging that the

BALCA decision in the Island Holdings case violated the APA.  *CATA v. Perez,* No. 13-7213

(E.D. Pa.).

59.      In response to the BALCA decision and the *CATA v. Perez* lawsuit, DOL stayed

further action on the Island Holdings SPWDs rather than vacating them as directed by BALCA.

DOL also stayed all other challenges to SPWDs pending before the Center Director. The stay of

all such proceedings, adopted by DOL in December 2013, remains in effect.

60.     The plaintiffs in *CATA v. Perez* moved for summary judgment and in response,

DOL agreed that BALCA's actions were improper.  DOL's brief stated:

> The BALCA's *Island Holdings* decision does not reflect the legal position of the Secretary of Labor because the BALCA erroneously rejected the Secretary of Labor's own plain interpretation of the relevant regulatory provisions, as reflected in the preamble to the [IFR] and a separate interpretive statement accompanying Appendix B.1 in the *Federal Register.  See* 78 Fed. Reg. at 24055; 76 Fed. Reg. at 21,036. . .

> CATA contends that they are entitled to judgment as a matter of law because the BALCA ALJs exceed their authority in purporting to overrule the Secretary of Labor's legal and policy determination that all H-2B employers must pay the adjusted wage rates under the IFR for all work performed in the United States on and after the employers receive DOL's supplemental prevailing wage determinations.  Although Defendants do not dispute the limited role of BALCA as subordinate agency employees, the government contends that this case should be resolved on more narrow grounds related to the CATA II Court's vacatur order.. . .

> In this case the CATA II Court vacated the invalid 2008 wage rule because it found that the rule substantively violates the INA and DHS's regulations that preclude the admission of H-2B workers if their employment will adversely affect the wages and working conditions of similarly employed United States workers. ….

> [B]ecause the CATA II Court's decision announced that the invalid 2008 wage rule substantively violates the INA, DOL was required to correct this defect on remand. . . . Thus, DOL was correct in adjusting the prevailing wage rates for all employers with H-2B workers currently in the United States under previously granted labor certifications based on the vacated 2008 wage rates.

> The Secretary of Labor stated in the preamble to the IFR that the wage adjustments under the supplemental prevailing wage determinations were necessary to bring the agency into compliance with the CATA II Court's vacatur order.  *See* 78 Fed. Reg. at 24,055.  The Secretary's interpretation of the IFR and DOL's subsequent issuance of the supplemental prevailing wage determinations were required by the nature of the Court's vacatur order. . . . Thus, DOL cannot endorse the BALCA's decision to the contrary. . .

> [E]ven if DOL was not required under the CATA II Court's vacatur order to adjust the prevailing wage rates for employers currently employing H-2B workers under certifications approved under the vacated 2008 wage rule, DOL's issuance of supplemental prevailing wage determinations under the IFR is

> authorized by the contractual conditions to which the employers agreed when
> signing ETA Form 9142, Appendix B. 1.
>
> Because the BALCA's decision in *Island Holdings* is contrary to this
> Court's vacatur order, or alternatively ignored the contractual conditions
> established under ETA Form 9142, Appendix B.1, the BALCA's decision must be
> vacated and DOL's supplemental prevailing wage determinations issued under the
> IFR must be given full force and effect as of the date each and every employer
> received a determination in order to bring the agency and the regulated public into
> compliance with the substantive requirements of the statute.

*CATA v. Perez,* Doc 31 at 12-18.

61.     Despite DOL's agreement that the BALCA decision should be vacated and the

SPWDs "given full force and effect," it took no action to accomplish that.

62.     By Order of July 23, 2014, the district court dismissed the *CATA v. Perez* case on

standing and ripeness grounds.

63.     On August 22, 2014, DOL notified the *CATA v. Perez* Court that the "Secretary of

Labor had determined that the pending supplemental prevailing wage determinations will be

addressed through a declaratory order proceeding."  *CATA v. Perez,* Doc 55.

64.     Four months later, on December 17, 2014, DOL finally published a notice of

"Intent to Issue Declaratory Order." 79 Fed. Reg. 75,179 (Dec. 17, 2014).  That notice stated that

"[t]he Secretary proposes issuing a declaratory order to overrule the BALCA's decision and legal

conclusions in *Island Holdings,* and to reaffirm the Secretary's interpretation of the regulations,

as stated in the preamble to the IFR. . . .  Following the issuance of such an order, the

supplemental prevailing wage determinations at issue in *island Holdings* and any similar pending

cases will be handled and finally resolved in accordance with the final declaratory order." *Id.*

The notice called for comments to be filed within 30 days and was later extended to February 2,

2015.  A total of 35 comments were filed although five of them merely requested additional time to comment.

65.     In the ensuing nine months since the close of the comment period, DOL has taken no action on the proposed declaratory order and on October 26, 2015, in response to inquiries, DOL's counsel indicated that "DOL has no plans to issue the Declaratory Order by a date certain."

66.     Plaintiffs and the members of the Plaintiffs class are suffering harm for which they have no adequate remedy because DOL's actions have imposed an indefinite stay on their right to receive SPWD wages for their 2013 work.   Not only have these workers been denied the increased wages they should have received in 2013, they can take no action to recover those wages unless and until DOL lifts the unlawful stay it has imposed on the SPWD obligation.

67.     Even if the stay is lifted, DOL's actions have severely handicapped the ability of workers to recover their lost SPWD wages because employers have been under no obligation to notify their workers of the SPWD issue.  Each day that DOL continues to hold the Employer Defendants administrative appeals of the SPWD in abeyance makes it more difficult to locate workers to inform them of their right to receive SPWDs.

68.     DOL's actions have also adversely affected U.S. workers in direct violation of DOL's statutory and regulatory mandate.  The entire point of the IFR and the SPWD process was to require payment of wages that would avoid adversely effects on the wages of similarly employed U.S. workers.  By definition, wages below the SPWD level, have the effect of depressing the wages of U.S. workers in occupations in which H-2B workers are employed.

Unless and until DOL lifts its stay of the SPWDs and actions are taken to ensure payment of the SPWDs those adverse effects will go unaddressed.

FIRST CAUSE OF ACTION
(Allowing and Staying Appeals Violates APA)

69.     The DOL Defendants' actions in allowing the Employer Defendants to pursue legal challenges to their SPWD determinations through administrative appeals to the NPC pursuant to 20 C.F.R.§ 655.10(g), to the Director of the NPWC pursuant to 20 C.F.R. § 655.11(a), and to BALCA pursuant 20 C.F.R. § 655.11(e) were contrary to law and in excess of the Department of Labor's authority in violation of 5 U.S.C. § 706(2)(A) and (C) because (1) 20 C.F.R. §§ 655.10(g) and 655.11(a) and (e) do not authorize administrative appeals raising legal challenges to the Secretary's SPWD requirement; (2) legal challenges to the Secretary's SPWD requirement may only be brought in federal court pursuant to the APA; (3) allowing the administrative appeals violated the *CATA II* March 21, 2013, Court Order, and (3) DOL's actions have allowed the wages of similarly employed U.S. workers to be adversely affected by the importation of foreign workers in violation of DOL's statutory and regulatory mandate.

SECOND CAUSE OF ACTION
(BALCA Decision Is Arbitrary In Violation Of the APA)

70.     DOL's Administrative Law Judge's decision in *Island Holding* was arbitrary, capricious, and contrary to law in violation of the APA.

23

### THIRD CAUSE OF ACTION
(Unlawful Withholding and Unreasonable Delay of Declaratory Order
In Violation of the APA)

71.     The DOL Defendants actions in unlawfully withholding and/or unreasonably

delaying issuance of a decision with respect to the Declaratory Order proposed on December 17,

2014, violates the APA, 5 U.S.C. § 706(1).

### FOURTH CAUSE OF ACTION
(Declaratory Relief Regarding Enforceability Of SPWDs)

72.     An actual controversy exists between Plaintiffs and the class they represent and

Defendants as to whether Plaintiffs and their class are legally entitled to receive SPWD wages

for their work in 2013 and whether those wages are due and payable.

73.     The Department of Labor Defendants have refused to take a position on the

enforceability of the SPWD requirement stating, on the one hand, that BALCA's decision does

not reflect the legal position of the Secretary of Labor but, on the other hand, taking no action to

overrule BALCA or enforce the SPWDs.

74.     The Employer Defendants have taken the position in their administrative appeals,

which are, in effect APA challenges to the SPWD requirement, that the SPWD requirement is

contrary to law and that their promise to pay the prevailing wage that is or will be set by the

Department of Labor does not obligate them to pay the SPWD to their workers.

75.     Given the actual controversy between the parties regarding the lawfulness of the

SPWDs, Plaintiffs and their class are entitled to a declaration pursuant to 28 U.S.C. §2201 that

the SPWD wages are lawfully required and due and payable.

24

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

(a)  Certifying this as a Rule 23(b)(2) class action on behalf of a class defined as: All U.S. and H-2B workers employed during 2013 by one or more of the Employer Defendants in jobs described in the Employer Defendants approved labor certification applications;

(b)  Declaring that DOL violated the APA, 5 USC § 706(2)(A) and (C) by allowing the Employer Defendants to use 20 C.F.R. §§ 655.10(g), and 655.11(a) and (e) to challenge DOL's legal authority to require payment of SPWDs;

(c)  Vacating all pending 20 C.F.R. §§ 655.10(g) and 655.11(a) and (e) appeals of SPWDs filed by the Employer Defendants;

(d)  Declaring that BALCA's December 3, 2013 decision in the Island Holdings case is arbitrary and capricious in violation of the APA;

(e)  Declaring that DOL violated the APA, 5 U.S.C. § 706(1) by unlawfully withholding and/or unreasonably delaying issuance of a decision in response to the Declaratory Order proposed on December 17, 2014;

(f)  Declaring that the wages required by the SPWDs issued to the Employer Defendants are lawfully required and due and owing to Plaintiffs and their class and requiring that such wages be paid within 30 days of the Court's judgment;

(g)  Award Plaintiffs their costs and expenses, including reasonable attorney's fees; and,

(h) Grant such further and additional relief as this Court may deem just and

proper.

Dated:  November 13, 2015

Respectfully submitted,

A. Darwin Holder, Jr. (Fed. Bar # 08474)
Holder Law Group
P.O. Box 10509
Towson, MD 21285
Tel.:  410-296-9550
Fax:  443-863-6633
darholder@holderlaw.com

Edward Tuddenham
228 W. 137th St.
New York, New York 10030
Tel: 212-234-5953
Fax:  512-532-7780
etudden@prismnet.com

Gregory Schell
Florida Legal Services, Inc.
508 Lucerne Ave.
Lake Worth, FL  33460
Tel: 561-582-3921
Fax:  561-582-4884
greg@floridalegal.org

ATTORNEYS FOR PLAINTIFFS